[S. F. No. 10117.  In Bank.—October 26, 1922.]

A. McCULLAGH et al., Petitioners, v. THE RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] Public Utilities—Waters and Water Rights—Supplying of Land Owners—Status of Company.—A water company engaged in supplying water to purchasers of lands from a company associated with it pursuant to contracts obtained in connection with their purchases which provided for the furnishing of the water at an annual rate, which water rights were appurtenant to the lands, is not a public utility and is not subject to the rate-fixing jurisdiction of the Railroad Commission.

[2] Id.—Articles of Incorporation—Power of Acquisition by Eminent Domain—Effect of.—A water company is not made a public utility by the mere fact that its articles of incorporation empower it to acquire water and water rights by eminent domain, where such power is never exercised.

[3] Id. — Status of Water Company — Former Decision of Railroad Commission. — In a proceeding to review an order of the Railroad Commission declaring a water company to be a public utility and fixing water rates, the decision of the commission that the company was a public utility in a prior proceeding in which the petitioners were not parties and were not in any way concerned in the issues therein presented is not binding upon them.

PROCEEDING in Certiorari to review an order of the Railroad Commission.  Order annulled.

------

1. Whether an irrigation company is a public utility, notes, 8 A. L. R. 268; 15 A. L. R. 1227.

The facts are stated in the opinion of the court.

Fred C. Pugh and F. S. Brittain for Petitioners.

Hugh Gordon, Wm. W. Clary, Richard C. Harrison and Devlin & Brookman for Respondents.

RICHARDS, J. *pro tem.*—This is a petition for a writ of review wherein A. McCullagh and some seventy-seven other persons are applicants for the writ, to be directed against the Railroad Commission of California and Coneland Water Company, a corporation, the respondents herein, and by which it is sought to have a certain order and decision of the Railroad Commission declaring the said Coneland Water Company to have been and to be a public utility and directing a certain increase in water rates affecting injuriously the rights of the applicants herein, reviewed and annulled.

As to the main facts of this case there is no material dispute and these may be briefly summarized as follows: The Los Molinos River rises in the Sierra Nevada Mountains and flows in a westerly and southwesterly direction through Tehama County to the Sacramento River. During a portion of its course it passes for several miles through the Rancho Rio de Los Molinos, a Mexican grant dating from the year 1844. A large part of this rancho came into the ownership of one J. S. Cone, who also acquired a considerable portion of another and adjoining Mexican grant known as the Rancho Rio de Los Berrendos, which properties were at the time of his death, which occurred prior to the year 1905, distributed to certain of his heirs. In the year 1905 one of these heirs, Mrs. Sherwood, conveyed certain portions of the land which she had thus acquired to a corporation known as the Los Molinos Land Company, which had been incorporated in that year for the purpose of receiving the title to said lands and of subdividing and selling the same. In the following year Mrs. Anna R. Cone, the widow of the decedent, J. S. Cone, also conveyed a portion of the lands of these two ranchos which she had received from the estate of her deceased husband, to the Los Molinos Land Company; said corporation also acquiring additional lands from other sources, making a total acreage of 10,560.19 acres under its

ownership during the latter year. In May, 1905, one Smith Crowder, then the vice-president and manager of the Los Molinos Land Company, posted along the Los Molinos River, notices of his intention to appropriate water from that stream to the extent of ten inches thereof, measured under a four-inch pressure, in which notices he stated the purposes for which he claimed said water to be for distribution for irrigation and domestic uses upon the lands owned or to be thereafter acquired by the Los Molinos Land Company lying south and west of the point of diversion. It seems evident that the posting of these notices, while done by and in the name of said Smith Crowder personally, were intended by him to be done for the benefit of and on behalf of the Los Molinos Land Company, since subsequently he transferred all of the rights which he had acquired by virtue of the posting of said notices to the latter corporation, which, during the year 1905 commenced installation of diversion works at the points indicated by said notices and proceeded with the construction of irrigation canals and laterals during that and the succeeding year for the distribution of the water thus appropriated over portions of the land it had undertaken to subdivide and sell, including the lands acquired from Mrs. Cone. In the early part of the year 1907 the Los Molinos Land Company conveyed to a corporation known as the Sunset Syndicate seventy-two inches of said water in payment for rights of way for its canal. A little later in the year 1907 the Coneland Water Company, one of the respondents here, was incorporated. All of the water rights thus acquired and of the distributing system thus in course of construction were transferred by the Los Molinos Land Company to the Coneland Water Company. All of the original capital stock of the latter, amounting to one hundred thousand dollars in par value was subscribed for and issued to the Los Molinos Land Company and said original capital stock has ever since been and now is owned by said latter corporation. The two corporations occupied the same offices and had practically the same officers, the Land Company paying the bills. Commencing in the year 1905, the Los Molinos Land Company had entered upon the subdivision and selling of its said lands in smaller tracts, to individual purchasers and continued such sales down to about the year 1912, when practically all of

its said lands had been sold. It seems to be conceded that said lands without irrigation were worth from ten dollars to thirty dollars an acre, according to location, but in connection with each of said sales the Los Molinos Land Company, prior to the formation of the Coneland Water Company, agreed with each of said purchasers that it would furnish each of their respective tracts of lands with water for irrigation purposes to the extent of one-fifth of a miner's inch per acre, which said water rights were to be appurtenant to the land in each case, and for which the purchaser agreed to annually pay the sum of two dollars per acre. After the formation of the Coneland Water Company the agreements of the Los Molinos Land Company with each of its said purchasers were changed so as to provide that the Coneland Water Company would agree to furnish each of said tracts of land with water in the same amount and for the same terms. The agreement which the Coneland Water Company was thus to provide was to be executed by it of even date with the deed conveying each of said tracts to its purchaser. Said agreement was to be termed a water right agreement and it was to be therein stipulated that the water right thus created should become appurtenant to the land and that such water right should only be transferable with and should run with said land. Each of said water right agreements were also to contain and in each case did contain, a clause reciting that the water company had sold and transferred certain other and similar water rights to prior purchasers of said lands from the land company and that it was understood and agreed that the water right transferred by the instant agreement should be subsequent and subject to the existing vested rights created by such prior agreements. It also provided that the water company should have the right to sell to other persons under similar contracts amounts of water totaling ten thousand miner's inches and that in the event the agreed quantity of water in the canals of the said water company, after supplying said prior contracts and rights to the use of said prior contracts and rights to the use of said water should fall short of ten thousand cubic inches under miners' measurement, then, and in that event, the water rights thereby transferred should entitle the holder thereof to a proportionate equal part of the available water.

The sales of land by the Los Molinos Land Company with the accompanying water right agreement of the Coneland Water Company continued thereafter and up to about the year 1912 when the Los Molinos Land Company had thus disposed of 10,145 acres of the entire tract theretofore owned by it and thus subdivided and sold. With the exception of two instances neither the Los Molinos Land Company nor the Coneland Water Company ever undertook or agreed to sell, rent, supply or deliver any of said water to other persons than the said individual purchasers of said lands. The first of said exceptions was the transfer of seventy-two inches of said water by the Los Molinos Land Company in the year 1907 to the Sunset Syndicate for certain rights of way for its canal. The second of said exceptions occurred in the year 1912 when the Coneland Water Company agreed to supply the Sunset Syndicate with five hundred inches of water for use upon certain lands owned by said Syndicate and described in said agreement. The consideration for this latter agreement was the compromise and settlement of certain controversies and litigation which had arisen between the Sunset Syndicate on the one hand and the Los Molinos Land Company and the Coneland Water Company on the other, involving certain rights of way for the canals and water ditches of the latter company over the lands which had been acquired by said Syndicate. The waters thus transferred were to be used upon said lands of the Sunset Syndicate for such purposes as it might desire and entirely beyond the control of either the Los Molinos Land Company or the Coneland Water Company after its diversion to said lands. As a portion of the consideration for such water the Sunset Syndicate agreed to pay the Coneland Water Company the sum of twelve thousand five hundred dollars. In the year 1912, when the Railroad Commission had become invested with jurisdiction to regulate water corporations under and by virtue of the terms of the Public Utilities Act (Stats. 1911, Ex. Sess., p. 18) which went into effect on March 23d of that year, the Coneland Water Company began making reports to the Railroad Commission in compliance with the rules and regulations of the latter as to its method of transacting business and later in the same year the said water company applied to the commission for authority to issue additional capital stock, which

190 Cal.—2

application was granted. It also regularly thereafter filed with the commission its annual report. In the year 1914 two corporations known as the Los Molinos Citrus Farms Company and the Lyon Cattle Company, alleging themselves to be successors in interest of the Sunset Syndicate in said lands affected by the two agreements above referred to, transferring to the latter corporation seventy-two and five hundred inches of water, filed a complaint before the Railroad Commission alleging that the Coneland Water Company was a public utility, the water rates and charges of which were within the control of the commission and charging the said Coneland Water Company with unjust discrimination in the matter of its said rates, the contention of the complainants being that their predecessor, the Sunset Syndicate, had been charged the sum of twelve thousand five hundred dollars for the amount of water to be delivered to it under the terms of said two agreements while the said water company was only charging its other customers their annual rate of two dollars per acre, which was far less than the sum required to be paid by the terms of said agreement for the amount of water to be received by the Sunset Syndicate and its successors in interest. The Coneland Water Company appeared in said proceeding with the contention that it was not a public utility and hence was not subject to the jurisdiction of the Railroad Commission. It appeared that the sum of twelve thousand five hundred dollars, which it was to receive from the Sunset Syndicate was not in the nature of a water rate but was a payment made or to be made by the latter to it in compliance and settlement of certain controversies over property rights and that whatever rights the complainants had to receive water from its system of canals was derived solely from said contracts and was not based upon any duty which the respondent as a public utility owed to the complainants. Upon the hearing the commission went quite fully into the history of the transactions of the Los Molinos Land Company and the Coneland Water Company in regard to sales of land and water rights and as a conclusion therefrom held that the Coneland Water Company was a public utility and that its water system was and is a public utility water system and as such subject to the jurisdiction of the Railroad Commission. The Coneland Water Company apparently acqui-

esced in this decision and thereafter continued its operations in conformity with the rules and regulations of the commission applicable to public utilities. It is to be observed, however, that none of the petitioners herein were parties to said proceeding before the Railroad Commission, nor, as to their water rights or rates thereon affected thereby, nor were they or any of them parties to or concerned in the subsequent acts and conduct of the Coneland Water Company in conforming to the rulings of the Railroad Commission in said proceeding, nor in the subsequent acts and conduct of the said water company in conducting its business in conformity with the rules and regulations of the commission, up to the time at least when, in March, 1921, the proceedings were instituted by the Coneland Water Company before the Railroad Commission out of which the present controversy arose.

On March 21, 1921, the Coneland Water Company filed with the Railroad Commission its application for an order of said commission fixing just, reasonable and nondiscriminatory rates for water, in which it set forth that it was a public utility corporation and as such was the owner of a certain system of canals and ditches in Tehama County, California, and was and is engaged as a public utility in the sale, distribution and delivery of water through said system for purposes of irrigation to owners of certain lands therein described, describing the lands owned in severalty by the petitioners herein and naming these petitioners as their customers in the sale, distribution and use of said water. It then set forth the annual rate of two dollars per acre of their respective holdings paid by each of its said customers and proceeded to allege that said rates were unduly low and unjustly discriminatory and were unreasonable and noncompensatory. It therefore prayed that the commission fix the rates to be charged by it for its water thus supplied to its customers at such rate as the commission should deem reasonable. The petitioners herein having been served with process in said proceeding appeared therein and set forth fully and in detail the history of their and each of their relations with the Los Molinos Land Company and the Coneland Water Company and alleged that their and each of their rights to the use of the water of the Coneland Water Company upon their said lands had been

created and secured to them by contracts which created vested rights in each of the holders of said contracts to the use of the stipulated amount of water annually upon their said land at the rates provided therein; and that said petitioner Coneland Water Company was not and never had been, as to said respondents, a public utility corporation. Wherefore the respondents prayed that the Railroad Commission find as a fact that the said waters and water rights and irrigation system of the Coneland Water Company had never been dedicated to a public use and that said corporation is and always has been a private water company engaged in the sale and distribution of water and water rights to the lands of the respondents sold by the Los Molinos Land Company with such appurtenant water rights for private gain. Wherefore the respondents prayed for the dismissal of said petition.

Upon the hearing of the issues thus tendered before the commission, the facts hereinbefore recited were brought forth fully and in detail. On November 24, 1921, the commission rendered its decision, holding that the question of the jurisdiction of the Railroad Commission over the Coneland Water Company had been determined in the prior proceeding above referred to wherein the said corporation had been held to be a public utility and that the commission had jurisdiction to fix or regulate its water rates to its said customers. The commission accordingly determined that the rates theretofore charged for water supplies to its said customers by said water company were unjust and unreasonable, and proceeded to establish water rates to be charged its said customers, the petitioners herein, at $3.50 per year, payable in semi-annual installments, making such rates effective on November 4, 1921. The petitioners herein filed an application for a rehearing in said proceeding, reiterating their former contention, which application for rehearing was by the commission denied on December 10, 1921. They thereupon united in instituting the present proceeding seeking an annulment of the above decision and order of the Railroad Commission and setting forth in their said application herein the practically undisputed facts above recited.

[1] We are unable to perceive any material distinction between the facts of this case, as to the principles involved,

and the question presented in the case of *Allen* v. *Railroad Commission et al.*, 179 Cal. 68 [8 A. L. R. 249, 175 Pac. 466]. In that case, as in this, the owner of a large tract of arid land had acquired similar rights to the use of the water of a near-by river which it was proposed to bring, by means of canals, ditches and laterals to its said lands and to distribute the same thereon for purposes of irrigation and domestic uses. The lands thus greatly increased in value by the proposed use of the said water thereon were to be subdivided and sold in smaller tracts to individual purchasers under agreements, by the terms of which each purchaser was to receive as a part and portion of his agreement to purchase the land, a perpetual water right to receive annually a specified amount of water upon his said land for which he was to pay a definite annual sum per acre thereof. The form and method by which these transfers of the ownership of the land and its appurtenant water right were to be consummated were in practical effect identical in each case since there was in each case a land company owning, subdividing and selling the land, and a water company ostensibly owning, diverting and distributing the water and issuing the water rights agreement and certificates to the purchaser of each several tract of land in pursuance of the land company's contract with such purchaser that he should be entitled to receive the same, the land company and the water company in each case being organized, owned, controlled and operated by the same individuals. In each of said cases the water right agreed to be conveyed to each purchaser of a portion of said land was expressly made appurtenant to the tract of land so purchased and ran with said land. In each case after the land company had disposed of a large portion of its said lands the individual purchasers and holders of these appurtenant water rights, the water company finding its agreement to supply water to and upon the several portions of said larger tract held in these several ownerships, undertook to go before the Railroad Commission and have it declared that the said water company was a public utility and as such subject to the jurisdiction of said commission for the purpose of having its water rates as fixed by its aforesaid agreements regulated and increased by the orders of said commission. In certain of its aspects the instant case furnishes a stronger justifica-

tion for the interference of this court with the orders of the Railroad Commission in the premises than was presented in the Allen case, since in that case said acts and things had been done by the land company and the water company which may be said to have furnished some basis for the claim of the latter that it was from its inception a public utility; as for example the record in the Allen case disclosed that upon the original survey and plat of the lands of the Hemet Land Company there was delineated and laid out a townsite, which was to be supplied as to the lots therein to be sold to later purchasers with water for public and domestic uses and which was supplied as the townsite developed into the town or city of Hemet. As to such portion of the water of the Lake Hemet Water Company as were devoted to such purposes this court held that there had been a dedication thereof to public uses and that as to such town or city said water company was a public utility. No such complication is presented in the instant case. The Coneland Water Company never, with the exception of the instances above noted, devoted its water to any other uses than the supply of its holders of contractual water rights. The exceptions being its two special agreements with the Sunset Syndicate for the supply of a definite quantity of water for the independent use of that corporation and its successors. Such an exceptional transaction cannot be taken to evidence the devotion of the whole or any portion of the water of the Coneland Water Company to general public uses. The respondents, however, contend that in certain of its aspects this case presents stronger reasons for upholding the orders of the Railroad Commission than were presented in the Allen case. [2] One of these consists in the fact that in the articles of incorporation of the Coneland Water Company it was provided that the corporation should have power to "acquire water and water rights by appropriation, purchase, *condemnation, eminent domain* and all other lawful ways and means." It is argued that the power to acquire water by condemnation and eminent domain are essentially the powers of a *quasi*-public corporation and hence of a public utility, and that the assertion of this power in its articles of incorporation indicated the intent of said corporation from its inception to be a public utility. This court, however, has held in the case of *Del Mar Water, Light &*

*Power Co.* v. *Eshleman,* 167 Cal. 666 [140 Pac. 591], that "the mere chartered authority does not mark the nature of an operating corporation." Mr. Justice Shaw in his concurring opinion in that case puts it aptly: "The fact that the articles of incorporation empower the company to engage in public service does not, of itself, constitute proof that it is engaged in such public service, or that it has dedicated such property as it may own to such public service. . . . The only effect of the adoption of such articles by a corporation is to give it the capacity to engage in such public service if it so desires. After having become incorporated in this manner, it has the power to engage in such service in the same sense that an individual has power to engage in such service. It may or may not do so, and until it does, it cannot be said to be subject to the jurisdiction of the Railroad Commission." In the instant case there was no showing before the Railroad Commission that the Coneland Water Company had ever attempted to exercise the powers of eminent domain or had ever acquired any property whatever by condemnation. No significance is therefore to be given to its reservation in its articles of incorporation of powers which it has never in fact exercised.

[3] The respondents make the final contention that the Coneland Water Company has taken on the status of a public utility by virtue of the decision of the Railroad Commission holding it to be such in the proceedings instituted before the commission by the Los Molinos Citrus Farms Co. et al. against the Coneland Water Company to have it so declared; which proceedings were reported in volume 8, Opinions and Orders of the Railroad Commission, page 24, wherein the commission decided that the said Coneland Water Company was a public utility. It is to be noted, however, that the petitioners herein were not parties to that proceeding and were not in any way concerned in the issues there presented nor in the conclusions arrived at by the commission in so far as the establishment of any water rates affecting the rights or rates of these petitioners are concerned. Such decision was therefore in nowise binding upon them; nor could the fact that the Coneland Water Company acquiesced in said decision and thereafter submitted itself to the rules, regulations and jurisdiction of the Railroad Commission have any binding effect upon these petitioners

or any of them. The first time that the contractual water rights of these petitioners and their annual water rates thereunder were called in question was in the proceeding before the commission to which they were made parties, and which are sought to be reviewed upon this writ. They then appeared therein and asserted, as for the first time they were required to do, the existence of contractual and vested rights to the amount of water and at the annual rate provided for in the several agreements which they had each received from the Los Molinos Land Company and the Coneland Water Company at the time of acquiring their several tracts of land. The Railroad Commission having upon the hearing in that proceeding ruled against these petitioners' contention and decided that said Coneland Water Company was a public utility and that as such the commission had jurisdiction to regulate and advance its water rates over those fixed as to these petitioners by said agreements, the petitioners have instituted these proceedings to review the decision of the commission in that regard.

We are entirely satisfied that this case comes fully within the principles declared in the case of *Allen* v. *Railroad Commission, supra,* and later affirmed and upheld in the case of *Stratton* v. *Railroad Commission,* 186 Cal. 119 [198 Pac. 1051]. The cases of *Traber* v. *Railroad Commission,* 183 Cal. 304 [191 Pac. 366], and *Butte County Water Users Assn.* v. *Railroad Commission,* 185 Cal. 218 [196 Pac. 265], cited by the respondents herein contain nothing out of harmony with the views expressed herein, since in each of those cases a state of facts was presented before the commission showing that as to the parties before it the water companies therein concerned had taken on the quality of public utilities through the dedication of their water systems and service to public uses. No such showing having been made before the commission in the instant case, the conclusion reached in the decision of that tribunal, in the absence of the requisite facts to sustain it is the proper subject of review in the present proceedings.

The order of the Railroad Commission is annulled.

Waste, J., Lennon, J., Wilbur, J., Shaw, C. J., and Lawlor, J., concurring.