[Civ. No. 2974. Third Appellate District.—November 16, 1925.]

CONELAND WATER COMPANY (a Corporation), Respondent, v. THOMAS R. NICKALLS, Appellant.

[1] PLEADING—ACTION RELATING TO TRUST—PARTIES.—In matters relating to the trust, the trustee of an express trust is authorized to sue without joining with it the beneficiary, and the defendant in such suit has the right to set up in his answer or cross-complaint any defense or cause of action relating to the trust property which he could have set up against the beneficiary; and the rights of said defendant are not prejudiced by the denial of his motion to make the beneficiary a party.

[2] CONTRACTS — AGREEMENT TO FURNISH WATER — MISTAKE AS TO QUANTITY—INTENT OF PARTIES—CONTEMPORANEOUS ORAL AGREEMENT.—In this action for an adjudication of plaintiff's rights and duties under its contract with defendant to furnish him "not exceeding at any time four inches of water" for the irrigation

---

1. See 25 Cal. Jur. 351; 26 R. C. L. 1341.
2. See 10 Cal. Jur. 927.

of his land, consisting of twenty acres, defendant's answer and cross-complaint (in which he attempted to allege facts to show such a mutual mistake of the parties as to entitle him to a judgment reforming the contract by substituting eight inches of water for the four inches specified therein) did not allege that anything was embodied in or omitted from the contract through mistake or that any term thereof was intended or understood to mean anything different from the plain meaning of the terms used, but showed no more than an oral agreement which was not embodied or intended to be inserted in the written contract executed by the parties; and a written contract which is certain in its terms cannot be modified by a contemporaneous oral agreement in direct conflict therewith.

[3] ID.—REVISION OF WRITTEN AGREEMENT—LIMITED POWER OF COURT. The last clause in section 3401 of the Civil Code, to the effect that, in revising a written instrument, the court "is not confined to the inquiry what the language of the instrument was intended to be," was not intended to neutralize the other provisions of said section, but the court is limited to the inquiry "what the instrument was intended to mean, and what were intended to be its legal consequences."

[4] ID.—QUANTITY OF WATER—CERTAINTY OF TERMS—CONDUCT OF PARTIES.—Where the contract under which plaintiff undertook to furnish defendant with "not exceeding at any time. four inches of water" for the irrigation of his land, consisting of twenty acres, was not uncertain or of doubtful construction on its face as to the quantity of water called for, the fact that for fourteen years plaintiff had supplied defendant "the quantity of water required for the beneficial and proper irrigation of his land" was not relevant in determining the intention of the parties as expressed in said contract.

[5] ID.—STATEMENTS IN BOOKLET—KNOWLEDGE OF INACCURACY—RELIANCE UPON.—Where defendant, by a simple arithmetical computation which he was competent to make, could have ascertained that the quantity of water specified in his contract was only about half that stated in a certain booklet issued by plaintiff, he was not justified in relying upon the statement in said booklet as to the amount of water available.

[6] ID.—RELIANCE UPON REPRESENTATIONS AND PROMISES—CONFLICT WITH CONTRACT—FRAUD—MISTAKE.—The contract having expressly . provided that plaintiff would furnish defendant "not exceeding at any time four inches of water," defendant was not justified in relying upon the representations and promises made

4.   See 6 Cal. Jur. 306; 6 R. C. L. 854.
5.   See 10 Cal. Jur. 636.

by plaintiff's representative, that it did not know but believed that the quantity of water mentioned in the contract was sufficient to properly irrigate defendant's lands, but that if it should prove insufficient plaintiff would furnish such quantity as might be necessary; and the making of such promises and representations would not estop plaintiff from standing upon the terms of the written contract, in the absence of fraud or of mistake as to the meaning thereof.

(1) 4 C. J., p. 925, n. 5; 30 Cyc., p. 90, n. 35; 39 Cyc., p. 449, n. 67, p. 456, n. 16.   (2) 34 Cyc., p. 972, n. 35, p. 973, n. 36.   (3) 22 C. J., p. 1248, n. 29.   (4) 13 C. J., p. 546, n. 54, p. 548, n. 57, p. 549, n. 58.   (5) 21 C. J., p. 1129, n. 59, p. 1130, n. 61; 39 Cyc., p. 1279, n. 41, p. 1283, n. 69.   (6) 21 C. J., p. 1123, n. 36; 22 C. J., p. 1259, n. 88.

APPEAL from a judgment of the Superior Court of Tehama County. John F. Ellison, Judge. Affirmed.

The facts are stated in the opinion of the court.

Fred C. Pugh and Curtiss E. Wetter for Appellant.

Richard C. Harrison, Albert E. Chandler, W. P. Johnson and Haven, Athearn & Chandler for Respondent.

FINCH, P. J.—Plaintiff brought this action for an adjudication of its rights and duties under its contract with defendant to furnish him water for the irrigation of his land, consisting of twenty acres. The contract, executed September 29, 1908, is attached to the complaint and made a part thereof. It has been held that the plaintiff is not a public utility and is not subject to the rate-fixing jurisdiction of the Railroad Commission. (*McCullagh* v. *Railroad Commission,* 190 Cal. 13 [210 Pac. 264].) The parts of the contract material to the questions arising on this appeal are as follows:

"The party of the first part agrees to furnish to the party of the second part not exceeding at any time four inches of water during the irrigating season of the year. . . . An inch of water is understood to mean 14,000 gallons in 24 hours."

The complaint contains the usual averments in actions for declaratory relief. It is alleged therein that the defendant claims to be entitled to the use of a greater quantity of water

than that specified in the contract and that such claim is
without right.  The defendant filed an answer and a cross-
complaint, the plaintiff's demurrers to which were sustained
by the court.  The defendant thereafter filed an amended
answer and cross-complaint, to which the plaintiff demurred,
and the court sustained the demurrers without leave to
amend.  A trial was thereafter had, the defendant not ap-
pearing, and judgment was entered establishing the rights
of the parties in accordance with the terms of the contract.
This appeal is from the judgment so entered.  The amended
answer and cross-complaint cover thirty-three pages of the
printed transcript and are, therefore, too long to be set out
at length.  The issues raised by the answer and cross-com-
plaint will be stated separately in connection with the dis-
cussion thereof.

The answer alleges that the Los Molinos Land Company at
all times mentioned therein was and is now the owner of all
the capital stock of the plaintiff corporation and that plain-
tiff at all times has been and is now "the agent and trustee
of Los Molinos Land Company, holding for it the naked
legal title to said properties."  [1]  The defendant moved
the court for an order making the Los Molinos Land Com-
pany a party to the action.  The motion was denied, and
appellant assigns the ruling as error.  If the allegations of
the answer and cross-complaint are true, the plaintiff is a
trustee of an express trust of which the Los Molinos Land
Company is the beneficiary.  In matters relating to the
trust, the plaintiff was authorized to sue without joining
with it .the beneficiary.  (Code Civ. Proc., sec. 369.)  The
defendant had the right to set up in his answer or cross-com-
plaint any defense or cause of action relating to the trust
property which he could have set up against the Los Molinos
Land Company.  (*Kelley-Clarke Co.* v. *Leslie,* 61 Cal. App.
559 [215 Pac. 699].)  His rights, therefore, were not preju-
diced by the denial of his motion to make that company a
party.  Since, if the allegations of the answer are true, both
the Los Molinos Land Company and the plaintiff are bound
by the acts of either, the word plaintiff will be used to desig-
nate both or either of them.

It appears from the answer that at the time the defend-
ant purchased the land in question from plaintiff it was
not under irrigation but was "raw and semi-arid" land of

"little value without irrigation"; that defendant agreed to purchase said land and pay $100 an acre for the same with a water right; that J. D. Sherwood was fully authorized to represent plaintiff; that in September, 1908, the defendant tendered the full purchase price of the land to Sherwood; that Sherwood thereupon offered to deliver to defendant a deed to the land and the contract alleged in the complaint; that the defendant "had no knowledge of irrigation and no knowledge or experience as to the quantity of water necessary to properly irrigate lands in the Sacramento valley or elsewhere, and had no means of acquiring such knowledge, and so informed said Sherwood at the time, and further informed said Sherwood that defendant would not sign said water-right agreement or purchase said lands unless the same conveyed an adequate water right"; that "thereupon it was represented to defendant by said Sherwood . . . that one-fifth of one miner's inch of water per acre per season was believed by said water company and said land company to be an adequate water right for said lands for the growing and maturing of any and all crops which said land was adapted to produce; that said companies were not as yet fully informed as (to) the quantity of water per acre which was actually necessary to irrigate the lands they were colonizing, including defendant's lands, but that if said quantity of water would prove to be insufficient to properly irrigate said lands, as aforesaid, said companies would deliver to defendant and to all of their colonists such additional quantity of water, without additional charge or expense to defendant, as should be proved by demonstration and practice to be necessary to properly irrigate his said lands, and that it was the intention of said companies to convey to defendant and to all of their colonists an adequate and sufficient quantity of water to properly irrigate their lands; that if defendant accepted said deed and executed and accepted said water-right agreement the quantity of water he would be entitled to receive, and would receive thereunder, would be the quantity of water actually required to benefit said tracts of land"; that defendant believed said representations to be true, "and believed that one-fifth of one miner's inch of water . . . was a sufficient quantity of water to beneficially irrigate his said lands, and in reliance upon said representations executed and accepted said water right agreement

and paid the full purchase price for said lands''; that
''through the mutual mistake of the parties thereto, and
said land company, said water right agreement does not
truly express the intention of the parties in this, that plain-
tiff and defendant and said Los Molinos Land Company at
the time of the execution and delivery of the deed and water
right agreement, . . . believed that four inches of water
during the irrigating season of the year was an abundance
of water to beneficially irrigate said twenty acres of land
. . . and all crops which said land was adapted to grow,
including crops of alfalfa; whereas said quantity of water
is not sufficient'' therefor; that ''eight inches of water de-
livered during the irrigating season of the year is the small-
est quantity of water which will properly or beneficially
irrigate said twenty acres of land, and defendant alleges that
eight inches of water instead of four inches of water during
the irrigating season of the year is the quantity of water
which plaintiff and said land company have annually de-
livered to defendant, and which defendant has annually used
in irrigating said land prior to April 1, 1923, and said quan-
tity of water has been demanded by and delivered to de-
fendant as of right for the fourteen years next preceding
the year 1923, in accordance with the true intent and mean-
ing of said water right agreement''; that ''defendant did
not discover said mistake until subsequent to April 1, 1923,
and could not with reasonable diligence sooner have dis-
covered the same''; that ''said Los Molinos Land Company
and Coneland Water Company have uniformly interpreted
said water right agreement during the fourteen years last past
in accordance with the mutual understanding and agreement
between defendant and said Los Molinos Land Company and
Coneland Water Company at the time of the purchase of
said land, as aforesaid''; that the land company and the
water company ''have uniformly and for more than fifteen
years last past placed a similar interpretaton upon all the
water right agreements issued by them to purchasers of
lands from said land company and have delivered the quan-
tity of water required for the beneficial and proper irriga-
tion of said lands to the owners thereof as a matter of right,
. . . and have uniformly and generally represented to pur-
chasers and prospective purchasers and to the general public
by means of letters, advertisements in newspapers and

printed matter prepared by them, that a full and complete water right was conveyed with every parcel of land sold."

[2] Appellant contends that the foregoing alleged facts show such a mutual mistake of the parties as to entitle him to a judgment reforming the contract by substituting eight inches of water for the four inches specified therein. It is not alleged that anything was embodied in or omitted from the contract through mistake or that any term thereof was intended or understood to mean anything different from the plain meaning of the terms used. Appellant relies upon the case of *F. P. Cutting Co.* v. *Peterson,* 164 Cal. 44, 49 [127 Pac. 163, 165], wherein it is said: "The fact that no word was inserted which the parties did not intend to insert and none omitted which they did intend to insert or supposed had been inserted, does not prevent the application of the rule, nor make it any the less a case of mistake." The contract involved in that case contained the following provision: "The above prices guaranteed against the California Fruit Canneries Association opening printed prices for the season of 1908." Contrary to the expectation of the parties and its prior practice, the association did not print the opening prices which it thereafter established for the season of 1908. It clearly appeared at the trial that the provision quoted was intended to refer to the general market prices to be fixed by the association and that the word "printed" was used to exclude occasional or special prices as a standard. In that case it was alleged that such provision was inserted in the contract with the intention that the "guarantee should protect this defendant against any prices which might be made on said goods by said California Fruit Canneries Association for said season of 1908." The answer in this case contains no similar allegation. The parties had in mind that four inches of water might be insufficient to properly irrigate the land, because it was orally agreed that more water would be supplied if necessary. [3] "In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be." (Civ. Code, sec. 3401.) The last clause in the section was not intended to neutralize the other provisions thereof, but, while the court is not confined in such a case "to the inquiry what

the language of the instrument was intended to be," it is limited to the inquiry "what the instrument was intended to mean, and what were intended to be its legal consequences," and a party seeking a reformation of the instrument must so allege. (*National Bank* v. *Exchange Nat. Bank,* 186 Cal. 172, 181 [199 Pac. 1]; *Harding* v. *Robinson,* 175 Cal. 534, 542 [166 Pac. 808]; *Horton* v. *Winbigler,* 175 Cal. 149, 154 [165 Pac. 423]; *Auerbach* v. *Healy,* 174 Cal. 60 [161 Pac. 1157].) The foregoing allegations show no more than an oral agreement which was not embodied or intended to be inserted in the written contract executed by the parties. A written contract which is certain in its terms cannot be modified by a contemporaneous oral agreement in direct conflict therewith. (Code Civ. Proc., sec. 1856; Civ. Code, sec. 1625; *Pacific States Securities Co.* v. *Steiner,* 192 Cal. 376 [220 Pac. 304].)

[4] The answer alleges that for fourteen years the plaintiff has supplied the defendant with "the quantity of water required for the beneficial and proper irrigation" of his land. Appellant says: "There are many cases holding in substance that when the terms of a contract are in dispute the practical interpretation placed thereon by the parties before the controversy arose is controlling." "It is only in relation to contracts that are uncertain, or of doubtful construction on their face, that conduct is to be looked to in aid of construction. Where the terms are plain and certain, the court will be guided by the language used and construe the intention of the parties to have been in accordance with their agreement." (6 Cal. Jur. 306; *Jameson* v. *Chanslor-Canfield M. Oil Co.,* 176 Cal. 1, 8 [167 Pac. 369].)

[5] In the second count of the answer and in the cross-complaint, the foregoing facts and those to follow are pleaded as an estoppel. It is alleged therein that at the time of the execution of the contract the plaintiff "represented that said water right agreement was intended to convey to defendant the quantity of water required by his said lands for the beneficial irrigation thereof and that the specifying of a definite quantity of water therein was really done to prevent colonists upon said company's lands from taking advantage of said land company and demanding and using more water than necessary, to the injury of other colonists on said lands"; that "plaintiff and said land com-

pany further represented that they had an abundance of water for all of their lands and a full and adequate water right was sold with every parcel of land sold by them, including the lands sold to defendant''; that ''defendant would not have purchased said lands had he known he was not securing a water right sufficient to beneficially irrigate the same''; that ''defendant prepared his said lands and planted the same to alfalfa at great expense upon the advice of Los Molinos Land Company''; that ''defendant has made valuable and extensive improvements on said lands in reliance upon the representations of plaintiff and Los Molinos Land Company that said water right agreement conveyed an adequate water right''; that ''during the year 1912 defendant moved upon said lands and has made his home thereon ever since, and has made improvements thereon of the value of $4,000 and has leveled and checked and sowed about 18 acres thereof to alfalfa, and has planted and grown valuable fruit trees and shade trees thereon''; that ''a short time prior to the time defendant moved upon and personally began to farm said lands said Los Molinos Land Company represented to defendant in a printed booklet issued by it and delivered to defendant as follows:

''All the Water You Want

''Is there plenty of water for irrigation? All you can use in the dryest season. We guarantee to cover every acre 38 inches deep during the year. In addition there is 25 inches of annual rainfall, making 63 inches of water available for the land altogether, or over five acre feet.

''Has the Company enough water to supply 38 inches of water to each settler? We have almost exclusive water rights on the Los Molinos River and additional water rights on Antelope Creek. Measurements taken by the government on these streams for several years during the lowest flowage show that we have a great abundance of water for all our land.

''Is the water measured out for the land owner and must he give notice when he desires to use it? The company reserves the right to measure the water so as to protect everybody. If one user took ten times his share, some one else might be short. Notice is also necessary, if the Company requires it. In practice, everybody is using all the water he wants whenever he wants it.''

It is further alleged that "thirty-eight inches of water per acre per year are equivalent to two-fifths of one miner's inch per acre, or eight inches of water delivered during the irrigating season of the year"; and that "defendant did not discover until subsequent to April 1, 1923, that said pamphlet specified a greater quantity of water than that provided in said water right agreement."

By a simple arithmetical computation the defendant, who alleges that he "had followed contracting and building as a business," could have ascertained that a constant flow of four inches of water, or 56,000 gallons a day, for a year would equal in quantity a depth of about 38 inches of water over all of his land, or half that quantity if the flow continued for but six months. The defendant, therefore, was not "permissibly" ignorant of the discrepancy between the booklet and the contract, if it may be said that there is a discrepancy. Having a convenient and ready means of ascertaining the truth, the defendant was not justified in relying upon the statement contained in the booklet. (10 Cal. Jur. 636; *Wood* v. *Blaney,* 107 Cal. 291, 295 [40 Pac. 428]; *Champion* v. *Woods,* 79 Cal. 17, 20 [12 Am. St. Rep. 126, 21 Pac. 534]; *Faulkner* v. *Bank of Italy,* 69 Cal. App. 370 [231 Pac. 380, 383]; *Robbins* v. *Law,* 48 Cal. App. 555, 562 [197 Pac. 118].)

[6] In each alleged defense in the answer, and in each cause of action attempted to be stated in the cross-complaint it is alleged that at the time the contract was executed the plaintiff stated, through its representative, that it did not know but believed that the quantity of water mentioned in the agreement was sufficient to properly irrigate defendant's land, but that if it should prove insufficient the plaintiff would furnish such quantity as might be necessary and that plaintiff subsequently represented that it would furnish all the water that was required. Such promises and representations are in direct conflict with the written agreement to furnish "not exceeding at any time four inches of water." Since the defendant knew the terms of his contract, he was not justified in relying upon promises and representations in necessary conflict with the express provisions thereof. To hold that such promises and representations estop plaintiff from standing upon the certain terms of the written contract, in the absence of fraud or of mistake as to the mean-

ing thereof, would be to vary the terms of the written agreement by parol evidence.

Without giving any consideration in the decision of this case to the facts stated in *McCullagh* v. *Railroad Commission, supra,* it is deemed proper to state, in justice to plaintiff, that such facts explain the reasons which actuated plaintiff in supplying defendant and others with more water than it had agreed to furnish. It therein appears that from the time the Railroad Commission was established in 1911 to October, 1922, when the McCullagh case was decided, the plaintiff acted upon the assumption that it was a public utility and subject to the regulation and control of the Commission in the distribution of water and the rates it was entitled to collect therefor and that the Commission so held. In the McCullagh case it was decided that the plaintiff is not a public utility but is bound by its contracts with the users of water. The plaintiff thereafter appears to have proceeded upon the theory that, being itself so bound, the water users were likewise bound by the terms of their contracts with it.

The judgment is affirmed.

Plummer, J., and Hart, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 11, 1926.