Argued February 1, reversed and dismissed February 15, 1916.

# CUMMINS v. JONES.*

(155 Pac. 171.)

**Municipal Corporations—Control of Streets—"Public Utility Vehicle."**

1. A city ordinance providing that "public utility vehicles" shall not be operated within the corporate limits except under or by virtue of a franchise, and defining such vehicle as any auto-car, auto bus, jitney, omnibus, automobile, taxicab or other vehicle run on the streets of such city to or from a point within or without the city over any particular route for the transportation of passengers for hire or fares, but excluding from the operation and effect of said ordinance, railroad cars, street railway cars and hotel buses, also automobiles, taxicabs used exclusively as sight-seeing cars, and carriages, is not invalid or void, as such classification in an ordinance is not discriminatory.

**Municipal Corporations—Control of Streets by City.**

2. No citizen has the right to use the streets of a city for the prosecution of his private business, and any attempted use for that purpose may either be prohibited or regulated as the municipality may deem best for the public good; hence a city may, by ordinance, prohibit the operation of public utility vehicles as jitney buses on its streets.

[As to obstruction of street by private person, see note in 1 Am. St. Rep. 840.]

From Clackamas: GEORGE R. BAGLEY, Judge.

In Banc.    Statement by MR. JUSTICE BENSON.

A. B. Cummins and others commenced a suit against Linn E. Jones, as mayor, and E. L. Shaw, as chief of police of Oregon City, Oregon.    The facts in the case at bar are as follows:

On September 8, 1915, the city council of Oregon City passed an ordinance entitled:

"An ordinance providing that public utility vehicles shall not be operated in Oregon City except under or by virtue of a franchise or franchises given or granted by Oregon City."

---

*On the regulation of jitney buses, see note in L. R. A. 1915F, 840.
                                        REPORTER.

Section 1 of this ordinance is devoted to definitions of the phrase ''public utility vehicles'' and other terms used therein.   Sections 2 and 3 are as follows:

''From and after the first day of October, 1915, it shall be unlawful for any person to operate any public utility vehicles on any street of Oregon City, either wholly within Oregon City or partly within Oregon City to or from a point outside of Oregon City, without first obtaining a franchise therefor from Oregon City, which franchise shall be given or granted by ordinance.   Each such franchise shall be given and granted on such terms, provisions and conditions as may be determined by the ordinance giving or granting such franchise.''

The remaining section provides a penalty for violating the provisions of the act.   The plaintiffs in their complaint allege that they are each engaged in the operation of what is commonly known and designated as a jitney bus, between points in the City of Portland and points in the City of Oregon City, for the purpose of carrying passengers for a fare of 25 cents per passenger from either of said cities to the other, and that said ordinance applies to the vehicles of each of them in the operation thereof as aforesaid; that the defendants, as officers of Oregon City, are about to enforce such ordinance, and are refusing to permit plaintiffs to operate their motor buses in the carriage of passengers for hire between the two cities, and have threatened to arrest and imprison plaintiffs if they do so operate their vehicles.   It is also alleged that the ordinance is void because it is harsh, unreasonable, arbitrary, discriminatory, confiscatory and class legislation; that it is void, for the reason that it confers arbitrary power upon the council to grant or refuse to citizens of the United States the privilege of carrying passengers for hire by automobile from points in Portland to points

in Oregon City according to the mere will of the council, and not in accordance with any fixed rule; that the ordinance is void for the reason that it was not passed in good faith either for the purpose of revenue or for regulation, but for the sole purpose of preventing competition with the Portland Railway, Light & Power Company. The complaint also sets out the following paragraph, styling it as a "resolution" passed by the council:

"Mr. Templeton reported for the committee on streets and public property and recommended that all applications for jitney ordinances between Oregon City and Portland be required to pay $50 per quarter, and be required to furnish a bond in the sum of $5,000 before a license to operate be granted by the city. It was further voted that the city attorney enforce the present ordinance in regard to jitneys"

—which is alleged to be gross discrimination against plaintiffs and those similarly situated. To this complaint a general demurrer was filed, which being overruled by the trial court, the defendants declined to further plead, and a decree was entered perpetually enjoining the enforcement of the ordinance, and defendants appeal.    REVERSED. SUIT DISMISSED.

For appellants there was a brief with oral arguments by *Mr. Christian Schuebel*, City Attorney, and *Mr. Charles D. Latourette*.

For respondents there was a brief over the names of *Mr. Arthur I. Moulton* and *Messrs. Lafferty & Merrick*, with oral arguments by *Mr. Moulton* and *Mr. A. W. Lafferty*.

MR. JUSTICE BENSON delivered the opinion of the court.

1. It is obvious from the mere reading of the "resolution" above set out that it is not a resolution or

authoritative act of the council, but merely a recommendation of a committee, and the record does not disclose that the council ever acted thereon.   We therefore dismiss it from our consideration and turn to our investigation of the ordinance.   In  Section 1 we find the definition of a "public utility vehicle" to mean:

"Any auto car, auto bus, jitney, omnibus, automobile, taxicab, or other vehicles propelled, operated, driven or drawn by any motive power whatever (including vehicles drawn by horses or other animals), which is run or operated  on the  streets of Oregon City to or from a point within or without Oregon City, or between particular points in Oregon City, or to a particular point in Oregon City, to or from a particular point outside of Oregon City, or over any particular route or routes for the purpose of affording a means of local transportation of passengers or persons for hire cr fares as may offer themselves for transportation along the way or course or route on which it is used or operated or may be running: Provided, that railroad cars, street railway cars and hotel buses and also automobiles and taxicabs used exclusively as sight-seeing cars, and also carriages, automobiles and taxicabs which do not operate or run over a particular route or to or from a particular point or between particular points [or] not used for hire or fares, shall not be considered public utility vehicles within the meaning thereof."

It has already been held by this court that such a classification does not render an ordinance invalid by reason of discrimination: *Thielke* v. *Albee,* 76 Or. 449 (150 Pac. 854) ; Id., *ante,* p. 48 (153 Pac. 793).

2. A careful examination discloses the fact that the ordinance in question does not undertake to regulate the operation of "utility vehicles," but simply to prohibit all of them from operating until further ordinances shall be passed which shall license and regulate. There is, then, but one question for us to consider, and

that is: Has the city the power to prohibit the owners of jitney cars from carrying on their business upon its streets? In the case of *Greene* v. *City of San Antonio* (Tex. Civ. App.), 178 S. W. 6, Mr. Chief Justice FLY, in passing upon a "jitney" ordinance, says:

"No man has the right to use a street for the prosecution of his private business, and his use for that purpose may be prohibited or regulated as the state or municipality may deem best for the public good. * * In the case of *Fifth Avenue Coach Co.* v. *City of New York*, 194 N. Y. 19 (86 N. E. 824, 16 Ann. Cas. 695, 21 L. R. A. (N. S.) 744), it was held * * that the city had the authority to grant or withhold the right to run coaches on the streets."

Again quoting from the same opinion:

"So in this case appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel. The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the trustee and a compliance with the conditions upon which the permission to so use them is given."

This case is cited with approval in *Le Blanc* v. *City of New Orleans*, 138 La. 000 (70 South. 212). The same doctrine is announced in the case of *Dickey* v. *Davis* (W. Va.), 85 S. E. 781 (L. R. A. 1915F, 840), from which we quote as follows:

"The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and ob-

viously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage-coach or omnibus.   The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual and extraordinary.   As to the former the extent of legislative power is that of regulation; but as to the latter its power is broader.   The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities'': Citing *Jersey City Gas Co.* v. *Dwight,* 29 N. J. Eq. 242; McQuillin, Mun. Corp. 1620.

Our attention has not been called to any authorities to the contrary.   We conclude, therefore, that since the ordinance in question is purely prohibitory, and cities have the undoubted right to prohibit such use of their streets, the demurrer should have been sustained.   A decree will be entered here sustaining the demurrer and dismissing the suit.

REVERSED.   SUIT DISMISSED.

MR. JUSTICE EAKIN not sitting.