SAMUEL MORIN, PROSECUTOR, v. ANDREW L. NUNAN, RECORDER, &c., RESPONDENT.

Argued February 19, 1918—Decided March 21, 1918.

1. An ordinance of the township of Weehawken which provides that no licenses shall be granted for any automobile or motor vehicle, to be used for the transportation of passengers for hire, in the township, except to a citizen of the United States is legal. The conviction of an alien for driving such a vehicle, in violation of the ordinance, without a license, sustained.

2. Citizenship may be the basis of classification for valid legislation, but there is, however, in this respect, a distinction to be drawn, between those employments, which pertain to a private business—the right to labor for a living in the ordinary occupations, and those based upon a privilege or a governmental regulation, as part of the police power; in the latter citizenship may be made the basis of a classification, which will not be illegal.

On *certiorari.*

Before Justices BERGEN and BLACK.

For the prosecutor, *Weller & Lichtenstein.*

For the respondent, *William C. Asper.*

The opinion of the court was delivered by

BLACK, J.    Samuel Morin, the prosecutor, was convicted by the recorder of the township of Weehawken and fined $10. The legality of this conviction is brought under review. There is no dispute about the facts. It is conceded that the defendant is not a citizen of the United States, but a Russian alien; that he was operating an automobile, or motor vehicle, commonly called a "jitney," in the township, in violation of section two (2) of a supplemental ordinance passed November 12th, 1917. The ordinance requires that carriages, motor vehicles, &c., used for the transportation of passengers for hire, in the township, shall not be operated by any person not a citizen of the United States, while being thus used. The prosecutor testified that he was driving for a Mrs. Rose Statfeld. The fundamental question, therefore, for solution is the legality of the ordinance under which the conviction was had. The defendant insists that the township of Weehawken had no constitutional right to limit the operation of motor vehicles, for the transportation of passengers for hire, to citizens of the United States.

Further pertinent facts in the case are that the ordinance in question is a supplement to the ordinance passed September 11th, 1916. This ordinance was designed to regulate "jitneys," but included all vehicles that came within its provisions, used for the transportation of passengers for hire in the township. This ordinance was approved by the commissioner of motor vehicles as being in full compliance with section 25, part 7, *Pamph. L.* 1915, *p.* 305. The defendant had a driver's license dated January 1st, 1917, from the department of motor vehicles, under the Motor Vehicle

act (*Pamph. L.* 1906, *p.* 177), and he testified that he was driving for another person; but this does not give the holder of a driver's or automobile license the right to use an automobile or motor vehicle for the transportation of passengers for hire, where the state or any of its municipalities regulates the traffic and requires a license for that purpose. *Pamph. L.* 1916, *p.* 283, § 2. This act was sustained by this court in the cases of *West* v. *Asbury Park,* 89 *N. J. L.* 402; *Irwin* v. *Atlantic City,* 90 *Id.* 99.

It is not controverted that the township has the power to license and regulate vehicles used for the transportation of passengers for hire under the state statutes. *Pamph. L.* 1912, *p.* 209; *Pamph. L.* 1915, *p.* 305, § 25; *Pamph. L.* 1917, *p.* 358, *art.* 15, § 1.

The fundamental question, therefore, is whether the township has the legal power to discriminate against aliens, by refusing licenses to run motor vehicles or jitneys through its streets for the carriage of passengers for hire. This, under the cases, seems to turn on the point whether the right to use the public streets and places for private purposes of gain is a vested right or simply a privilege; if a privilege, it may be made to depend upon citizenship, and such a classification is not illegal and does not offend against constitutional prohibitions. Thus, by the statute of this state, it shall not be lawful for any person not a resident citizen of the state to use any net or seine for the purpose of catching fish. *Comp. Stat., p.* 2521, § 92. So, hunting by unnaturalized foreign-born residents of the state without a license is forbidden. *Comp. Stat., p.* 2528, §§ 134, 138. So, the state may deny to non-residents the right to plant oysters and fish in its waters or to take the same therefrom. *People* v. *Lowndes,* 130 *N. Y.* 455. So, a state may make it unlawful for unnaturalized foreign-born residents to kill wild game. *Patsone* v. *Commonwealth,* 232 *U. S.* 138; *affirming,* 231 *Pa. St.* 46.

Other cases illustrating this point applied to different subjects are as follows: May prevent a person from practicing law who is not a citizen of the United States (*In re Yamashita,* 30 *Wash.* 234; *Re Admission to Bar,* 61 *Neb.* 58; *Re*

*O'Neill*, 90 *N. Y.* 584); may provide that only citizens shall be employed upon public works. *People* v. *Crane*, 214 *Id.* 154; *affirmed*, 239 *U. S.* 195; *L. R. A.* (1916), *D.* 550; see 6 *R. C. L.* 394, § 388; *Fruend Police Power*, § 712.

So, there is a line of cases which hold that the state can refuse to grant to aliens a license to engage in those trades, occupations or callings which are subject to governmental control or regulation as a part of its police power.

Thus, a state may deny a license to persons not citizens to sell liquor. *Trageser* v. *Gray*, 73 *Md.* 250; 9 *L. R. A.* 780; *Bloomfield* v. *State*, 86 *Ohio St.* 253; 41 *L. R. A.* (*N. S.*) 726; *De Grazier* v. *Stephens*, 101 *Tex.* 194; 16 *L. R. A.* (*N. S.*) 1033. The first case is cited with approval in *Commonwealth* v. *Hana*, 195 *Mass.* 262; 11 *L. R. A.* (*N. S.*) 799, where it was held that the state in the exercise of its police power may restrict the granting of peddler's license to citizens on the ground that the business of peddling furnishes such opportunities for the practice of fraud, that it is a proper subject for legislative regulation.

*Contra; State* v. *Montgomery*, 94 *Me.* 192; discrimination against non-residents. *Sayre* v. *Phillips*, 148 *Pa. St.* 482; 16 *L. R. A.* 49.

It will not be questioned that by the organization of the township within the borders of the state, the state imparts to its creature, the municipality, the powers necessary to the performance of its functions, and to the protection of its citizens in their persons and property. The police power is one of these. Ordinances passed in the legitimate exercise of this power are therefore valid. *Sayre* v. *Phillips, supra;* 12 *C. J.* 910, § 418.

All of the cases cited and relied upon by the prosecutor pertain to a private business, the right to labor for a living at the ordinary kinds of business, "those inalienable rights which belong to human beings at all times and in all places." Thus, the right to carry on a laundry business (*Yick Wo* v. *Hopkins*, 118 *U. S.* 356); to work as a barber (*Templar* v. *State*, 131 *Mich.* 254).

A statute is void that requires every employer of more than five workers at any one time to employ at least eighty (80) per cent. qualified electors or native-born citizens of the United States. *Truax* v. *Raich,* 239 *U. S.* 33. Applied to the employment in a restaurant, the business of which requires nine employes, in that case, the court said the assertion of an authority to deny to aliens the opportunity of earning a livelihood when lawfully admitted to the state, would be tantamount to the assertion of the right to deny them entrance and abode, for in the ordinary cases they cannot live when they cannot work. Page 42.

. The danger of. accident and damage arising from the use of all swift moving vehicles in crowded streets is pointed out by this court in the case of *West* v. *Asbury Park,* 89 *N. J. L.* 405, as a basis for the legislation giving. the municipalities control over the so-called jitneys under the act. *Pamph. L.* 1916, *p.* 283; *Desser* v. *City of Wichita,* 96 *Kan.* 820; *L. R. A.* (1916) *D.* 246; *Memphis Street Railway Co.* v. *Rapid Transit Co.,* 133 *Tenn.* 99; *L. R. A.* (1916) *B.* 1151.

We think that the operation of vehicles for the transportation of passengers for hire, on the public streets of the township, is a privilege, subject to the control of the township. It is not one of those inalienable rights, which belong to human beings, a right to labor for a living. The township of Weehawken had a right to limit the license to citizens of the United States. The fact that the prosecutor was driving for another, if it is a fact, seems to us immaterial, as affecting the result. We find nothing illegal in the ordinance. The conviction of the prosecutor will therefore be affirmed, with costs.