NICOLA GIZZARELLI *vs.* WALTER A. PRESBREY *et al.*

JUNE 6, 1922.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1)  *International Law.  License to Operate Motor Bus.  Constitutional Law.*

Cap. 93, § 4, ordinances of the city of Providence, providing that no license to operate a motor bus shall be granted to one who is not a citizen of the United States, is not in violation of the treaty between the United States and Italy, providing that the citizens of the respective countries shall enjoy the same rights and privileges as nationals, and is not unconstitutional under the equal protection provisions of the 14th amendment of the constitution of the United States.

(2)  *Constitutional Law.  International Law.*

The test of legislation denying rights to aliens is not whether there is a discrimination against aliens, but whether there is any proper basis for such discrimination.

MANDAMUS.  Heard on petition for writ and denied.

STEARNS, J.  The proceeding is by petition for a writ of mandamus.

The petitioner is a foreign born subject of the King of Italy and a resident of the city of Providence.  The respondents are the police commissioners of Providence.  The petitioner, who had operated a passenger motor bus on the public highways in the city of Providence, after the enactment in December, 1920 of Chapter 276 of the ordinances of the city of Providence, made application to the respondent commissioners for a license to operate a motor bus.  The

application was denied for the reason that petitioner was not a citizen of the United States. Section 4 of Chapter 93 of the city ordinances provides that no person shall operate a motor bus in any street in the city without first obtaining an annual license therefor from the police commissioners, and that no such license shall hereafter be granted to any person who is under the age of twenty-one years, or not a resident of this state or who is unable to carry on an intelligible conversation in the English language or who is not a citizen of the United States. The claim is that Section 4 is invalid, in that it is a discrimination against citizens of Italy and a violation of the treaty between the United States and the Kingdom of Italy of 1871 as supplemented by the treaty of 1913. Article 3 of the treaty provides that: "The citizens of each of the high contracting parties shall receive in the states and territories of the other the most constant security and protection for their persons and property and for their rights . . . and shall enjoy in this respect the same rights and privileges as are or shall be granted to nationals, provided that they submit themselves to the conditions imposed on the latter."

The question thus raised is to be determined by construction of the treaty, and this is now established by judicial decisions. In *Patstone* v. *Pennsylvania*, 232 U. S. 138, it was held in construing this treaty, "that the equality of rights that the treaty assures is equality only in respect of protection and security for persons and property;" that a law of Pennsylvania making it unlawful for any unnaturalized foreign born resident to kill wild game except in defence of person or property and to that end making it unlawful for such foreign born person to own or possess a shot gun or rifle, with a penalty of twenty-five dollars and a forfeiture of the gun or guns, was not unconstitutional under the equal protection provisions of the fourteenth amendment of the Constitution of the United States nor was it in violation of the treaty with Italy; that a state may protect its wild game and preserve it for its own citizens;

also, the fact that the act discriminates against a particular class, namely aliens, does not invalidate the law.    At p. 144, the general principle is stated that "a state may classify with reference to the evil to be prevented; and that if the class discriminated against is, or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out.   .   .   .   The state may direct its law against what it deems the evil as it actually exists without covering the whole field of possible abuses." In *Commonwealth* v. *Hana*, 195 Mass. 262, it was held that a statute providing that licenses to hawkers and peddlers should be granted only to a citizen, or one who has declared his intention of becoming a citizen of the United States, did not violate the fourteenth amendment, and that such discrimination against aliens was a valid exercise of the police power.

Authority to use the public highways as a common carrier of passengers for hire is not a right belonging to the individual but is in the nature of a privilege. *Child* v. *Bemus*, 17 R. I. 230; *Morin* v. *Nunan*, 91 N. J. L. 506. The ordinances in question were enactments made in the exercise of the police power delegated to the city council by the legislature. *Fritz* v. *Presbrey*, 44 R. I. 207.   Due consideration for the safety of the public requires that a careful selection should be made of the individuals to whom authority is given to use the public highways as carriers of passengers for hire.   We think it fairly may be said that as aliens as a class are naturally less interested in the state, the safety of its citizens and the public welfare, than citizens of the state, to allow them to operate motor buses would on the whole tend to increase the danger to passengers and to the public using the highways.   It is clear that we can not say that the evil to be apprehended and the proposed remedy are so dissociated as to warrant the court in holding the ordinance to be invalid.   As there is a basis for the distinction made between citizens and aliens and for such a classification as made, the ordinance is not repugnant to the

fourteenth amendment of the constitution of the United States nor is it in violation of the treaty with Italy. *Crane v. People of State of New York,* 239 U. S. 195; *Heim v. McCall,* 239 U. S. 175; *Trageser v. Maryland,* 73 Md. 250. In no event can petitioner's rights be greater than those of citizens of other states of the Union. The power of the state in proper cases to make a distinction between its own citizens and citizens of other states has frequently been upheld. For instance, the state can prohibit citizens of other states in the Union from taking oysters in the navigable waters of the state. *State v. Medbury,* 3 R. I. 138; from catching lobsters within the jurisdiction of the state, *State v. Kofines,* 33 R. I. 211; can prohibit non-residents from catching fish for the manufacture of manure and oil and the manufacture of manure and oil from fish caught within the waters of the state, *Chambers Bros. v. Church & Co.,* 14 R. I. 398. The right of the state to deny to aliens the right to practice law is undoubted. 1 R. C. L. 803. The test of such legislation is not whether there is a discrimina-

(2) tion against aliens, but rather is there any proper basis for such discrimination.

The ordinance does not interfere with the rights of aliens to engage in the ordinary kind of business and thereby to earn a living, or with any right of property, but denies to them certain privileges which the state in the exercise of its police power can grant or withhold in its discretion.

We find that the ordinance is valid.

The petition for writ of mandamus is denied and dismissed.

*Pettine & DePasquale,* for petitioner.

*Elmer S. Chace,* City Solicitor, *Herbert E. Eklund,* Asst. City Solicitor, for respondents.