[L. A. No. 8473. In Bank.—October 1, 1925.]

MARION L. FROST et al., Petitioners, v. RAILROAD COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

[1] AUTO STAGE AND TRUCK TRANSPORTATION ACT — AMENDMENT OF 1919 — DEFINITION OF TRANSPORTATION COMPANY — PRIVATE CARRIERS.—Section 1 of the Auto Stage and Truck Transportation Act (Stats. 1917, p. 330), as amended (Stats. 1919, p. 457), which defines the term "transportation company" as used therein to include every person "operating . . . any automobile, jitney bus, auto truck, stage or auto stage used in the business of transportation of persons or property, or as a common carrier, for compensation over any public highway in this state between fixed termini or over a regular route," is applicable to a private carrier who is engaged *as a business* in the transportation of property by auto-truck for compensation over the public highways of the state between fixed termini and over a regular route, but operating solely under a private contract made after the enactment of said amendment.

[2] ID. — PRIVATE CARRIERS — RESTRICTIONS UPON — CONSTITUTIONAL LAW.—If the legislature is competent to thus define "transportation companies" to include private carriers, the latter cannot raise any charge or rate without first securing the consent of the Railroad Commission (Const., art. XII, sec. 20), cannot accord to one person any rate or facility different from that accorded to any other person (Const., art. XII, sec. 21), and cannot render a transportation service for any rate or charge less than that named in the tariff rates established by the Commission (Const., art. XII, sec. 22).

[3] ID. — CARRIER FILING SCHEDULE WITH RAILROAD COMMISSION — EFFECT OF.—A carrier who files with the Railroad Commission a schedule of his routes, tariffs, and charges, who is under compulsion to render transportation service of the kind, character, and quality prescribed by the Commission, who is disabled to enter into a contract for the rendition of transportation service of any kind, quality, or character different from that prescribed, or for a rate of compensation either greater or less than the prescribed rate, is at least subjected to the disabilities and limitations which circumscribe a public or common carrier.

[4] ID.—TRANSMUTATION OF PRIVATE CARRIER INTO PUBLIC CARRIER— LEGISLATIVE FIAT.—The state has no power by mere legislative fiat, or even by constitutional enactment, to transmute a private

4. See 22 Cal. Jur. 11.

utility into a public utility, or a private carrier into a public carrier.

[5] ID.—USE OF PUBLIC HIGHWAYS BY COMMON CARRIER—CHARACTER OF PRIVILEGE.—The right of a common carrier to use the public highways for the conduct of his business as such is not a vested or natural right, but is a mere privilege or license which the legislature may grant or withhold in its discretion, or which it may grant upon such conditions as it may see fit to impose.

[6] ID.—TRANSACTION OF PRIVATE BUSINESS OVER HIGHWAYS—RIGHT OF STATE.—The state has the right in the granting of the special privilege to transact private business over its public highways to require that the recipient of such privilege in consideration therefor return a reasonable *quid pro quo* to the public, and such in effect is what was done in and by the 1919 amendment to the Auto Stage and Truck Transportation Act, which extended the definition of a "transportation company" so as to include a private carrier who is engaged in the business of transportation of property by autotruck for compensation over the public highways of the state between fixed termini or over a regular route.

[7] ID.—REGULATION OF BUSINESS OF PRIVATE CARRIER ENGAGED IN BUSINESS OF TRANSPORTATION OF PROPERTY OVER HIGHWAYS—RELATION TO REGULATION OF BUSINESS OF COMMON CARRIER—JURISDICTION OF RAILROAD COMMISSION.—The regulation of the business of a private carrier engaged in the business of transporting property for hire upon the public highways between fixed termini or over a regular route is cognate and germane to the regulation of the business of a common carrier who is engaged in like transportation; and the Railroad Commission has jurisdiction or authority to supervise or regulate the business of such private carrier.

[8] ID.—PRIMARY PURPOSE OF REGULATION.—The primary purpose of regulation of the business of a private carrier using the public highways for the transportation of property is to secure the adequacy, regularity, and reliability of service and the reasonableness of rates and charges therefor.

[9] ID.—REFERENCE TO PROCEDURAL PROVISIONS OF PUBLIC UTILITIES ACT—EFFECT OF.—The fact that the Auto Stage and Truck Transportation Act, in section 7 thereof, adopts by reference the procedural provisions of the Public Utilities Act does not have the effect of rendering the former act inapplicable to private carriers.

[10] ID.—ACT NOT REGULATION OF USE OF HIGHWAYS.—The Auto Stage and Truck Transportation Act does not purport to be and is not in fact a regulation of the *use* of the highways.

[11] ID.—NATURE OF PRIVILEGE OFFERED BY ACT—ACCEPTANCE—CONDITIONS.—By the Auto Stage and Truck Transportation Act the

5.   See 13 Cal. Jur. 371; 13 R. C. L. 251.

state offers the special privilege of using the public highways for the transaction of private business, a privilege to which no one is entitled as of right; but the offer is conditional that the offeree shall return a consideration therefor by dedicating his property to the *quasi*-public use of public transportation, or, at least, by submitting himself to the conditions, regulations, and restrictions specified in the act. The offeree is not compelled to submit himself to those conditions, regulations, and restrictions, but if he does not he is not entitled to the privilege offered. If he does avail himself of the offered privilege he must be deemed to have accepted the conditions of the offer.

(1) 10 **C. J.**, p. 58, n. 62.    (2) 10 **C. J.**, p. 58, n. 62.    (3) 10 **C. J.**, p. 58, n. 62.    (4) 10 **C. J.**, p. 52, n. 78.    (5) 10 **C. J.**, p. 61, n. 1.    (6) 10 **C. J.**, p. 61, n. 1.    (7) 10 **C. J.**, p. 58, n. 62.    (8) 10 **C. J.**, p. 52, n. 80.    (9) 10 **C. J.**, p. 58, n. 62.    (10) 10 **C. J.**, p. 61, n. 1.    (11) 10 **C. J.**, p. 61, n. 1.

PROCEEDING in Certiorari to annul an order of the Railroad Commission commanding a private carrier to desist from the transportation of property, etc. Demurrer to petition sustained; order to show cause discharged.

The facts are stated in the opinion of the court.

Leonard, Surr & Hellyer for Petitioners.

Carl I. Wheat and Woodward M. Taylor for Respondents.

Thelen & Marrin, Sanborn & Roehl, Henry J. Bischoff and De Lancey C. Smith, *Amici Curiae.*

MYERS, C. J.—Review to annul a decision and order of the respondent Commission commanding petitioners to desist from the transportation of property by autotruck over a regular route and between fixed termini upon the public highways of the state for compensation unless and until they shall obtain a certificate of public convenience and necessity so to do from the respondent Commission. Petitioners were engaged in the transportation of citrus fruits belonging to the Redlands Orange Growers Association, a corporation, between the city of Redlands and Los Angeles harbor in this state, pursuant to a contract with said association. Petitioners were brought regularly before the Commission to answer to a complaint of a competing carrier, who was

engaged in the transportation of property between those
points as a common carrier under a certificate of public con-
venience and necessity issued by the Commission, and who
alleged that the business of transportation being carried on
by petitioners under their contract with the Redlands
Orange Growers Association, without the issuance of a cer-
tificate of public convenience and necessity, was in violation
of the Auto Stage and Truck Transportation Act (Stats.
1917, p. 330), as amended (Stats. 1919, p. 457). There is
no dispute as to any of the facts herein. All of the essential
facts are conceded to be correctly set forth in the allegations
of the petition and the exhibits attached thereto. Petitioners
had entered into a purported contract of lease with the Red-
lands Orange Growers Association whereby petitioners pur-
ported to lease to the association certain autotrucks owned
by petitioners to be used by the association in the transporta-
tion of its fruit from Redlands to Los Angeles harbor, but
which trucks were to be operated in such transportation by
petitioners. The Commission, after an analysis of the pro-
visions of the purported lease, found and determined, cor-
rectly as we think, that the same did not constitute a lease
and that the real contract between the parties was a contract
for transportation whereby petitioners undertook and agreed
to transport the fruit of the association between Redlands
and Los Angeles harbor during the period of time and for
the compensation therein specified. [1] The correctness of
this conclusion of the respondent Commission is not seriously
questioned by petitioners herein, and the question is, there-
fore, whether one who is engaged *as a business* in the trans-
portation of property by autotruck for compensation over the
public highways of the state between fixed termini and over
a regular route, but operating solely under a private con-
tract, is subject to the provisions of the Auto Stage and
Truck Transportation Act, *supra,* as amended. Section 1
of the act defines the term "transportation company" as
used therein to include every person "operating . . . any
automobile, jitney bus, auto truck, stage or auto stage used
in the *business of* transportation of persons or property, *or*
as a common carrier, for compensation over any public high-
way in this state between fixed termini or over a regular
route, . . . '" (with certain exceptions not pertinent herein).
The italicized words "business of" and "or" were added to

the section by the amendment of 1919 (Stats. 1919, p. 458, sec. 2). Petitioners would have us in construing this section read the phrase "or as a common carrier" as if it were "and as a common carrier," substituting the conjunctive "and" in place of the disjunctive "or," and thus conclude that the act as amended is applicable only to those who are engaged in such business of transportation as common carriers. We are unable to adopt this conclusion. To so hold would be to say, in effect, that the legislature accomplished nothing and intended nothing by this amendment. The definition of "transportation companies" contained in this section of the act as originally enacted plainly and unmistakably limited the same to common carriers. If any meaning or purpose whatsoever is to be ascribed to the amendment of 1919, it can be only the meaning and purpose of extending the act to make it applicable also to private carriers of the sort there described.

The question then arises whether under the provisions of the state and federal constitution the act is valid in its application to such private carriers. Various points relating to this question are ably discussed by counsel and by *amici curiae* who have filed briefs herein. It is contended in behalf of petitioners that this act in its application to private carriers has the effect of transforming them into public carriers by legislative fiat. Counsel for respondents vigorously deny that such is the effect, but it cannot be denied that the provisions of the act as applied to private carriers do closely approximate this result. Section 2 provides that no transportation company may operate "except in accordance with the provisions of this act." Section 3 forbids such operation unless a permit has first been secured as therein provided, and requires the applicant for such permit to specify the highways and the route over which the applicant intends to operate, and furnish description of each vehicle which applicant intends to use, including the seating capacity thereof if for passenger traffic, or the tonnage if for freight traffic, together with a schedule or tariff showing the passenger fares or freight rates to be charged. It provides that such permit may be issued or refused, or issued upon such terms and conditions as in the judgment of the Commission the public convenience and necessity may require. It provides further that no permit so issued may be assigned or

transferred without the consent of the granting authority. Section 4 empowers the Railroad Commission to supervise and regulate every such transportation company, to fix its rates, fares, charges, classifications, rules, and regulations, to regulate its accounts, service, and safety of operations, to require the filing of annual and other reports, and to supervise and regulate transportation companies "in all other matters affecting the relationship between such companies and the traveling and shipping public." Section 5 forbids operation even under a franchise or permit granted by any incorporated city or town, city and county, or county, without first having obtained from the Railroad Commission a certificate declaring that public convenience and necessity require the exercise of such right or privilege, and provides further that the Commission may attach to the exercise of the rights granted by such certificate such terms and conditions as in its judgment the public convenience and necessity may require. Section 6 forbids the issuance of any stock, stock certificate, or bond by such tranportation company except pursuant to an order first secured from the Railroad Commission. Section 7 provides that as to applications and complaints and procedure subsequent thereto all transportation companies will be subject to regulation by the Commission "under the conditions and subject to the limitations and with the effect specified in the public utilities act." Section 8 makes the violation of any of the provisions of the act or of any order, decision, rule, regulation, or direction of the Commission a misdemeanor and prescribes the punishment therefor. [2] Furthermore, if the legislature is competent to thus define "transportation companies" to include private carriers, it follows that they cannot raise any charge or rate without first securing the consent of the Railroad Commission (Const., art. XII, sec. 20), cannot accord to one person any rate or facility different from that accorded to any other person (Const., art. XII, sec. 21), and cannot render a transportation service for any rate or charge less than that named in the tariff rates established by the Commission (Const., art XII, sec. 22). [3] A carrier who files with the Railroad Commission a schedule of his routes, tariffs, and charges, who is under compulsion to render transportation service of the kind, character, and quality prescribed by the Commission, who

is disabled to enter into a contract for the rendition of transportation service of any kind, quality, or character different from that prescribed, or for a rate of compensation either greater or less than the prescribed rate, is at least subjected to the disabilities and limitations which circumscribe a public or common carrier (10 C. J. 37 et seq.). **[4]** It is conceded that the state has no power by mere legislative fiat, or even by constitutional enactment, to transmute a private utility into a public utility, or a private carrier into a public carrier (*Producers Transp. Co.* v. *Railroad Com.,* 176 Cal. 499 [169 Pac. 59]; *Associated Pipe Line Co.* v. *Railroad Com.,* 176 Cal. 518 [L. R. A. 1918C, 849, 169 Pac. 62]; *Van Hoosear* v. *Railroad Com.,* 184 Cal. 553 [194 Pac. 1003]; *Allen* v. *Railroad Com.,* 179 Cal. 68 [8 A. L. R. 249, 175 Pac. 466]; *Stratton* v. *Railroad Com.,* 186 Cal. 119 [198 Pac. 1051]; *McCullagh* v. *Railroad Com.,* 190 Cal. 13 [210 Pac. 264]; *Richardson* v. *Railroad Com.,* 191 Cal. 716 [218 Pac. 418]; *Klatt* v. *Railroad Com.,* 192 Cal. 689 [221 Pac. 926]; *Producers Transp. Co.* v. *Railroad Com.,* 251 U. S. 228 [64 L. Ed. 239, 40 Sup. Ct. Rep. 131, see, also, Rose's U. S. Notes Supp.]. It is argued by respondents, however, that the state does have the power either to grant to or withhold from its citizens the privilege of using its public highways for the purpose of transacting their private business thereon. As was said by the supreme court of West Virginia (*Dickey* v. *Davis,* 76 W. Va. 576 [L. R. A. 1915F, 840, 85 S. E. 781]):

"The right of a citizen to travel upon the highway and transport his property thereon in the ordinary course of life and business differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all; while the latter is special, unusual and extraordinary. As to the former, the extent of legislative power is that of regulation; but as to the latter its power is broader; the right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities."

The argument is that the privilege of using the public highways as a place for the transaction of private business

is not a vested right but a privilege which the state may grant or withhold at its pleasure; that having the right to withhold such privilege it may grant the same upon such terms and conditions as it may see fit to impose; that it may say in effect to the applicant for such privilege, "I will grant you the privilege of using the public highways for private gain in the transaction of your business upon the condition that you in turn shall dedicate the property used by you in such business to the public use of public transportation." There is much force in this contention. [5] It has been repeatedly decided that the right of a common carrier to use the public highways for the conduct of his business as such is not a vested or natural right, but is a mere privilege or license which the legislature may grant or withhold in its discretion, or which it may grant upon such conditions as it may see fit to impose (*Ex parte Lee,* 28 Cal. App. 719 [153 Pac. 922] ; *Hadfield* v. *Lundin,* 98 Wash. 657 [Ann. Cas. 1918C, 942, L. R. A. 1918B, 909, 168 Pac. 516] ; *Le Blanc* v. *City of New Orleans,* 138 La. 243 [70 South. 212] ; *Greene* v. *City of San Antonio* (Tex. Civ. App.), 178 S. W. 6; *Gizzarelli* v. *Presbrey,* 44 R. I. 333 [117 Atl. 359] ; *Morin* v. *Nunan,* 91 N. J. L. 506 [103 Atl. 378] ; *Lutz* v. *City of New Orleans,* 235 Fed. 978; *Cummins* v. *Jones,* 79 Or. 276 [155 Pac. 171] ; *Packard* v. *Banton,* 264 U. S. 140 [68 L. Ed. 596, 44 Sup. Ct. Rep. 264] ; *Memphis St. Ry. Co.* v. *Rapid Transit Co.,* 133 Tenn. 99 [Ann. Cas. 1917C, 1045, L. R. A. 1916B, 1143, 179 S. W. 635] ; *Cutrona* v. *Mayor, etc.* (Del.), 124 Atl. 658; *Taylor* v. *Smith,* 140 Va. 217 [124 S. E. 259] ; *Schoenfeld* v. *Seattle,* 265 Fed. 726; *Ex parte Tindall,* 102 Okl. 192 [229 Pac. 125] ; *Public Service Com.* v. *Fox,* 96 Misc. Rep. 283 [160 N. Y. Supp. 59] ; *Ex parte Sullivan,* 77 Tex. Cr. 72 [178 S. W. 537] ; *Child* v. *Bemus,* 17 R. I. 230 [12 L. R. A. 57, 21 Atl. 539] ; *Ex parte Bogle,* 78 Tex. Cr. 1 [179 S. W. 1193] ; *Fifth Ave. Coach Co.* v. *New York,* 194 N. Y. 19 [16 Ann. Cas. 695, 21 L. R. A. (N. S.) 744, 86 N. E. 824]). The supreme court of Washington said in *Hadfield* v. *Lundin, supra:* "If any proposition may be said to be established by authority, the right of the state in the exercise of its police power to prohibit the use of the streets as a place of private business, or as the chief instrumentality in conducting such business, must be held so established. Nor can it be questioned that the

power to prohibit includes the power to regulate even to the extent that the regulation under given conditions may be tantamount to a prohibition. Where the power to prohibit exists, the reasonableness of any regulation is palpably a legislative question, pure and simple.'' The foregoing cases all had to do with the right of common carriers. Whether the same rule should apply with equal force to private carriers engaged in using the streets as a place of private business or as the chief instrumentality in conducting such business has not been directly passed upon in any case which has come to our notice except as it may be said to have been impliedly adjudged in *State* v. *Price*, 122 Wash. 421 [210 Pac. 787]. Upon principle, however, we' perceive no reason why the rule should not apply with equal' force to the case of a private carrier who proposes to use the street as a place of private business or as the chief instrumentality thereof. The rule does not rest upon the circumstance alone that the carrier is engaged in operating a public utility and that his business is therefore affected with a public interest, but it rests equally upon the circumstance that he is using the public highways as the chief instrumentality of a private business conducted for private gain. In other words, he is enjoying a special privilege in the highways which are constructed and maintained at public expense and designed for the common use of all. Many of the cases expressly rest their decisions upon this latter ground. [6] We are of the opinion that the state has the right in the granting of such special privileges in its public highways to require that the recipient thereof in consideration therefor return a reasonable *quid pro quo* to the public and that such in effect is what was done in and by the 1919 amendment to the Auto Stage and Truck Transportation Act. The recent decision of the supreme court of the United States in the case of *Michigan Public Utilities Com.* v. *Duke*, 266 U. S. 570 [69 L. Ed. 445, 36 A. L. R. 1105, 45 Sup. Ct. Rep. 191], seems at first blush to be at variance with this conclusion, but we think that upon analysis it will be found not to conflict therewith. The Michigan statute is essentially similar to our Auto Stage and Truck Transportation Act in its relation to the questions here under consideration, except that it expressly provides what is claimed to be the necessary implication of our

own statute, namely, "any and all persons . . . engaged . . . in the transportation of persons or property for hire by motor vehicle, upon or over the public highways of this state between fixed termini or over a regular route shall be common carriers. . . . " It also prohibits the engaging in the business of such transportation without a permit from the Public Utilities Commission, which shall be issued in accordance with the public convenience and necessity, and requires the payment of fees, the carrying of insurance and the furnishing of an indemnity bond. Duke was engaged in the transportation by autotruck of automobile bodies from Detroit, Michigan, to Toledo, Ohio, under three private contracts with the manufacturers thereof. He had been doing such hauling for some years and had a large investment in property used exclusively for that purpose, was engaged in no other business, and did not hold himself out as a carrier for the public. The court held that the requirements and limitations of the statute as applied to him would impose an unlawful burden upon interstate commerce. It also said: "Moreover, it is beyond the power of the state by legislative fiat to convert property used exclusively in the business of a private carrier into a public utility, or to make the owner a public carrier, for that would be taking private property for public use without just compensation, which no state can do consistently with the due process of law clause of the Fourteenth Amendment." (Citing cases.) The essential difference between that case and this rests in the fact that Duke was operating under contracts subsisting before and at the time of the enactment of the Michigan statute, which contracts remained in part unperformed. The statute afforded to him no liberty of choice. It required him to devote his property at once to public transportation and thus would have disabled him to perform his subsisting contracts. To give it effect in its application to his situation would have been to impair the obligation of those contracts. If the contracts under which petitioners herein are operating had been entered into prior to the enactment of the 1919 amendment to our statute, and had been then subsisting and unperformed, petitioners would have been in position to invoke the authority of the Duke case. But petitioners' contract was not made until 1923, and they were under no compulsion to enter into it. They were free to

elect as to whether they would engage in the business of transportation upon the public highways between fixed termini or over a regular route and thus subject themselves to the conditions and limitations of the statute, or whether they would refrain from doing so and thus retain their status of unregulated private carriers. They voluntarily chose the former course and thereby subjected themselves to the regulations imposed by the statute. The following language from the opinion in *Le Blanc* v. *City of New Orleans, supra,* is pertinent in this connection:

"The streets of the cities and towns in Louisiana being among the things that are 'public' and 'for the common use,' no individual can have a property right in such use for the purposes of his private business, unless, speaking generally, that business being in the nature of a public service or convenience, such as would authorize the grant, the right has been granted by the state, which alone has the power to make or authorize it, or, by the particular city or town, acting under the authority of the state, and in such case the right can be exercised only in accordance with the conditions of the grant; that is to say, an individual seeking, but not possessing, a right of that kind, may accept the grant, with the conditions imposed by the offer, in which case he becomes bound by the conditions, or he may refuse to accept the conditions, in which case there is no grant, and without the grant so offered, or some other, from the authority competent to make it, he can never acquire the right to make use of a street as his place of business."

Aside from the foregoing considerations it would seem that the fact that petitioners' business is of necessity carried on almost wholly upon the public highways would of itself cause such business to be so affected with a public interest as to subject it to governmental regulation, but as this point has not been discussed by counsel, we do not pursue it further.

[7] It is contended that the constitution does not and the legislature cannot confer upon the Railroad Commission jurisdiction or authority to supervise or regulate a private act of the nature involved herein or the business of a private carrier. The constitution provides (art. XII, sec. 22): "Said commission shall have the power to establish rates of charges for the transportation of passengers and freight

by railroads and other transportation companies.'' In the case of *Western Association of Short Line Railroads* v. *Railroad Com.,* 173 Cal. 802 [1 A. L. R. 1455, 162 Pac. 391], it was held that this section of the constitution was self-executing to the extent that it transferred upon the Commission regulatory powers over companies transporting freight or passengers as common carriers for hire on the public highways by means of motor-trucks and automobile stages. It is insisted that the phrase ''other transportation companies'' must be taken to mean other like transportation companies, that is to say, other transportation companies which like railroads operate as common carriers. Section 22 of article XII also provides that ''no provision of this constitution shall be construed as a limitation upon the authority of the legislature to confer upon the railroad commission additional powers of the same kind or different from those conferred herein which are not inconsistent with the powers conferred upon the railroad commission in this constitution, and the authority of the legislature to confer such additional powers is expressly declared to be plenary and unlimited by any provision of this constitution.'' It must be taken as settled that this grant of authority to confer additional powers is limited (so far as applicable to the question here under consideration) to such additional powers as are cognate and germane to the regulation of railroads and other transportation companies (*Pacific Telephone etc. Co.* v. *Eshleman,* 166 Cal. 640 [Ann. Cas. 1915C, 822, 50 L. R. A. (N. S.) 652, 137 Pac. 1119]; *City of Pasadena* v. *Railroad Com.,* 183 Cal. 526 [10 A. L. R. 1425, 192 Pac. 25]; *City of San Bernardino* v. *Railroad Com.,* 190 Cal. 562 [213 Pac. 980]). The question thus presented is whether the regulation of the business of a private carrier engaged in the business of transporting property for hire upon the public highways between fixed termini or over a regular route is cognate and germane to the regulation of the business of a common carrier who is engaged in like transportation. We think this question must be answered in the affirmative. It is at once apparent that the private carrier is or at least may be in direct competition with the public carrier who is operating over the same route and whose business it is the duty of the Commission to supervise and regulate. [3] The primary purpose of such regulation

is to secure the adequacy, regularity, and reliability of service and the reasonableness of rates and charges therefor (*Franchise Motor Freight Assn.* v. *Seavey,* 196 Cal. 77 [235 Pac. 1000]). To accomplish this end there must of necessity be some restriction upon competition. As was said by the supreme court of Washington: "The purpose of the transportation act . . . is to permit the establishment of regular and dependable service whenever public necessity and convenience requires. No adequate service can be given without proper equipment. . . . An income must be earned, which will cover operating costs and depreciation, and give some return on the investment or the service cannot be long continued. In the case of *Public Utilities Com.* v. *Garviloch,* 54 Utah, 406 [181 Pac. 272], the supreme court of Utah said: 'The granting of a certificate of convenience and necessity by the commission to Chandler, therefore, was in the nature of a limited franchise, which authorized him to operate his automobile stage line over the route designated in the certificate for the time and under the conditions therein specified. The certificate, therefore, not only confers the authority to operate a stage line, but it necessarily also affords him protection against any one who unlawfully interferes with the right thereby conferred. If such is not the legal effect of the certificate, then the operation of utilities may easily become detrimental rather than beneficial to the public and thus result in a farce.' " (*Davis* v. *Nickell,* 126 Wash. 421 [218 Pac. 198].) If petitioners while engaged in transportation business of the kind and character described in the Auto Stage & Truck Transportation Act may exempt themselves from all of the limitations and conditions of that act by the simple device of entering into a special contract for such transportation there is no limit to the extent to which they may avail themselves of such device. If they may make one such contract they may with equal right make a dozen or a hundred. By this means they could take away from their competitor, who is operating as a common carrier under the restrictions and limitations imposed by the act, all of the most profitable and least burdensome of his business, leaving him obligated to carry the unprofitable remainder thereof, and thus disable him to render the service which the public interest requires. Transportation companies could thus secure all of the special privileges afforded

to common carriers without assuming any of their duties or obligations. This would, of course, defeat in large measure the purpose not only of the Auto Stage and Truck Transportation Act, but of the constitutional provision conferring transportation companies. The language of this court in jurisdiction upon the Railroad Commission to regulate the case of *Western Association etc.* v. *Railroad Com.*, *supra*, while used in a different connection is, nevertheless, pertinent to the present consideration. It was there said: " . . . It is not only a matter of common knowledge, but is presented in these cases, that in many instances these unregulated companies interfere seriously with the revenues of controlled public utilities, a percentage of whose revenues goes by way of taxes to the support of the state." We are satisfied that the regulation of private carriers when engaged in the business of transportation described in section 1 of the Auto Stage and Truck Transportation Act is cognate and germane to the regulation of common carriers engaged in like business. This conclusion is suggested, though not decided, in the case of *City of Pasadena* v. *Railroad Com.*, *supra*, wherein it was said: "Considering all these circumstances, the only reasonable conclusion is that the authority intended to be given to the legislature by this section to confer powers upon the railroad commission must be limited to the subject of powers over common carriers and transportation, and the control and regulation thereof by the commission, *and such other things as may be necessary or convenient for the proper and effectual exercise of such powers of regulation and control.*" (Italics added.)

[9] The fact that the Auto Stage and Truck Transportation Act, in section 7 thereof, adopts by reference the procedural provisions of the Public Utilities Act (Stats. 1915, p. 115), does not have the effect of rendering the former act inapplicable to private carriers. The fact, for example, that section 869 of the Code of Civil Procedure, in title 11 thereof relating to justices' courts, adopts by reference certain provisions of title 7 relating to superior courts, does not have the effect of making justices' courts courts of record. It is conceded that the Public Utilities Act applies only to public utilities and does not of its own force apply to any private carrier, but this fact does not disable the legislature to

extend its procedural provisions by subsequent legislation so as to make them applicable to other subjects.

[10] We agree with the *amici curiae* for the petitioners that the Auto Stage and Truck Transportation Act does not purport to be and is not in fact a regulation of the *use* of the highways (*Buck* v. *Kuykendall*, 267 U. S. 307 [69 L. Ed. 623, 45 Sup. Ct. Rep. 324]; *People* v. *Yahne*, 195 Cal. 683 [235 Pac. 50]). This renders it unnecessary to discuss the various contentions of *amici curiae* based upon the hypothesis that the act might be so construed. The contentions that the act takes private property for public use without compensation in violation of section 13 of article I of the state constitution and of section 1 of the fourteenth amendment to the federal constitution, and that it violates the due process clause of the fourteenth amendment are based upon the predicate that the effect of the act is to transmute a private carrier into a public carrier against his will by legislative fiat. As we have indicated above, our view is that the act does not and cannot have this effect. [11] What the act does, in effect, is to make a conditional offer of a special privilege. The offeree is not entitled to this privilege as a matter of right and therefore in order to obtain it he must submit to the conditions attached to the offer. He is not compelled to submit to these conditions, but if he does not do so he cannot avail himself of the privilege. If he does avail himself of the privilege under these circumstances, he is deemed to have thereby consented to the conditions. An analogous situation is presented by the provisions of article I, section 14 of our constitution, which provides that the taking of private property for a logging or lumbering railroad "shall be deemed a taking for the public use, and any person, firm, company or corporation taking private property under the law of eminent domain for such purposes shall thereupon and thereby become a common carrier." This is simply an offer of a special privilege to an offeree who is not otherwise entitled to it upon condition that he return the *quid pro quo* specified therein. If the owner of a private logging railroad should avail himself of this offered privilege by exercising the right of eminent domain, it cannot be seriously doubted that he would thereby become a public carrier. In such case it could not be said that his property had been taken for public use without compensation, but

rather it should be said that he had voluntarily dedicated it to the public use, or *quasi*-public use, of common carriage, and that his compensation therefor was the special privilege which he obtained thereby and to which he was not otherwise entitled. Having voluntarily elected to accept this privilege as compensation he would not be heard thereafter to assert that it was not adequate compensation. By the Auto Stage and Truck Transportation Act the state offers the special privilege of using the public highways for the transaction of private business, a privilege to which no one is entitled as of right. But the offer is conditional that the offeree shall return a consideration therefor by dedicating his prop- erty to the *quasi*-public use of public transportation or, at least, by submitting himself to the conditions, regulations, and restrictions specified in the act. The offeree is not com- pelled to submit himself to those conditions, regulations, and restrictions, but if he does not he is not entitled to the privilege offered. If he does avail himself of the offered privilege he must be deemed to have accepted the conditions of the offer.

The demurrer to the petition is sustained and the order to show cause is discharged.

Richards, J., Lawlor, J., Seawell J., Waste, J., Knight, J., *pro tem.*, and Lennon, J., concurred.

Rehearing denied.

Shenk, J., dissented.